# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

AMBER ANN FLINDERS,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:18-cv-770
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Amber Ann Flinders brings this action pursuant to 42 U.S.C. § 405(g) for

judicial review of the final decision of the Commissioner of Social Security ("Commissioner")

denying her application for disability insurance benefits ("DIB"). This matter is before the Court

on plaintiff's statement of errors (Doc. 14), the Commissioner's response in opposition (Doc.

20), and plaintiff's reply memorandum. (Doc. 23).

## I. Procedural Background

Plaintiff protectively filed her application for DIB on January 22, 2015, alleging

disability since April 24, 2014 due to fibromyalgia, migraines, upper and lower back pain,

nausea, vomiting, severe stomach pain, asthma, arthritis, anxiety, depression, obesity,

pneumonia, and antibiotic resistant sinus infection. The application was denied initially and

upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing

before administrative law judge ("ALJ") Christopher S. Tindale. Plaintiff and a vocational

expert ("VE") appeared and testified at the ALJ hearing on August 30, 2017. On April 16, 2018,

the ALJ issued a decision denying plaintiff's DIB application. On September 12, 2018, the

Appeals Council denied plaintiff's request for review, making the decision of ALJ Tindale the

final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The [plaintiff] has not engaged in substantial gainful activity since April 25, 2014, the alleged onset date (20 CFR 404.1571, *et seq.*).

3. The [plaintiff] has the following severe impairments: seizures; migraines; disorders of the spine; asthma; obesity; mood disorder; and anxiety disorder (20 CFR 404.1520(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] had the residual functional capacity [("RFC")] to perform light work as defined in 20 CFR 404.1567(b) except she can frequently climb ramps and stairs, but occasionally climb ladders, ropes, or scaffolds, and can frequently stoop, kneel, crouch, and crawl. The [plaintiff] can have no exposure to dangerous hazards such as unprotected heights. She must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation. She is limited to simple, routine tasks in a work environment free of fast production rate or pace work. She can have occasional contact with the public, [and] frequent contact with supervisors, and co-workers. She is limited to only occasional changes in the work setting and only occasional decision making required.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[1]

---

[1] Plaintiff has past relevant work as an EEG technician, a medium, skilled job, performed at a heavy level of exertion and a therapeutic program aide, a light, skilled position, performed at a medium level of exertion. (Tr. 20-21, 121).

7. The [plaintiff] was born [in] . . . 1975 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The [plaintiff] has a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from April 25, 2014, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 12-22).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled jobs such as router, with 54,000 jobs in the national economy; cafeteria attendant, with 60,000 jobs in the national economy; and label coder, with 20,000 jobs in the national economy. (Tr. 21-22, 122).

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

## D. Medical Evidence

### 1. Medical Records

Plaintiff began treating with pain management specialist, Dr. Mitchell Simons, at the Greater Cincinnati Pain Management Centers in May 2013. (Tr. 779-91, 857). She complained of head, neck, shoulder, low back and hip pain. Plaintiff reported her pain was aggravated by rising from a chair, bending, carrying, climbing stairs, lifting, exercising, pushing, pulling, repetitive motion, sitting, standing, stooping, walking uphill, and walking. Dr. Simons found trigger point tenderness in the occipital region, head and neck, and the thoracic and lumbar paraspinal muscles. Plaintiff exhibited increased pain with flexion, extension, and side bending of the cervical, thoracic and lumbar spine. She also exhibited cervical, thoracic and lumbar facet joint tenderness. Her straight leg raise test was negative, her bilateral sacroiliac joint was tender, and her extremities were within normal limits. Plaintiff's cranial nerves were grossly intact. Plaintiff had a normal gait and station and normal sensory function. Dr. Simons assessed

occipital neuralgia, thoracic spondylosis, migraine headache, lumbar spondylosis, myofascial pain, and depression. Dr. Simons updated her medication. (Tr. 779).

In July 2013, an MRI of the lumbar spine showed mild lower lumbar facet arthropathy at L4-L5, L5-S1 on the left. (Tr. 858). Plaintiff had unremarkable lumbar discs and no localized disc herniation producing any direct neural impingement. (*Id.*). On July 15, 2013, Dr. Simons noted that the MRI results "certainly would describe her low back pain that refers into her thighs." (Tr. 775). Dr. Simons noted that plaintiff had myofascial tenderness in the lumbar paraspinal muscles, increased pain with flexion and extension of the lumbar spine, lumbar facet joint tenderness, cervical facet joint tenderness, and increased pain with flexion and extension of the cervical spine. (*Id.*). Dr. Simons assessed occipital neuralgia, lumbar spondylosis, myofascial pain, and depression. (*Id.*). Plaintiff continued to treat with the Greater Cincinnati Pain Management Centers throughout 2013, 2014, and 2015. (Tr. 737-773).

In April 2015, plaintiff reported her pain level at a 4-5/10. On examination, Karen Buddendeck, CNP, found that plaintiff had occipital tenderness bilaterally and increased pain with flexion/extension of her cervical spine and lumbar spine. (Tr. 991). Plaintiff was approved for a left denervation at L3-4-5. (*Id.*). In May 2015, plaintiff reported that her medication provided 50-60% relief, and she was minimally active and had a fair mood, fair walking ability, fair ability to complete activities of daily living, and a fair quality of life. (Tr. 990). In June 2015, Dr. Simons noted that the left side denervation helped plaintiff quite a bit, but she continued to report pain in her head, neck, and shoulders. (Tr. 988). Dr. Simons noted that he would consider a right side denervation if there was a positive result from the test block. (*Id.*). In August 2015, plaintiff reported her head, neck, shoulder and low back pain-level as 4-5 on a 10-point scale. On examination, she exhibited myofascial tenderness in the trapezius muscle and increased pain with range of motion in her cervical spine and lumbar spine. (Tr. 985). Dr.

Simons noted that he would request an L-3-4-5 right denervation at the medial branches as plaintiff had a successful diagnostic facet nerve block. (*Id.*). Plaintiff continued to treat with Dr. Simons through at least January 2016.

Plaintiff consulted with neurologist, Dr. Tamer Abou-Elsaad, M.D., at Mercy Health Partners in April 2016 for new onset seizures, noting that she had a history of migraines that were controlled with medications. Dr. Abou-Elsaad noted that plaintiff was witnessed to have an episode of generalized motor seizure at work. On examination, she exhibited 2/4 reflexes, normal gait/posture, normal sensation to all modalities, no pronator drift, no dysmetria, 5/5 strength in all extremities, and normal tone, and she was alert and oriented x4. Dr. Abou-Elsaad ordered an MRI and EEG and told plaintiff that she was not permitted to drive until cleared. (Tr. 1041-42). Plaintiff underwent an MRI of her brain on April 27, 2016, due to "[n]ew onset seizure." The MRI revealed avidly enhancing mass over the left parietal convexity, likely reflecting meningioma. (Tr. 1054-56). An EEG was within normal limits. (Tr. 1020).

During a follow-up in June 2016, plaintiff described three episodes of possible seizures. Dr. Abou-Elsaad assessed new onset seizures, possible epilepsy versus nonepileptic seizures, with no clear triggers; left parietal benign meningioma, which was not likely the cause of her seizures; chronic depression; chronic pain; and chronic migraines with aura. (Tr. 1046-47).

On July 27, 2016, plaintiff returned to Dr. Abou-Elsaad following another seizure when she became acutely poorly responsive. (Tr. 1051). Dr. Abou-Elsaad noted that plaintiff's family was concerned about her memory and living by herself. (*Id.*). Dr. Abou-Elsaad noted that she was on Keppra and denied any side effects from the medication. Dr. Abou-Elsaad increased Keppra slowly over the two weeks and advised plaintiff not to drive. Dr. Abou-Elsaad also advised plaintiff and her family that she should not be living by herself for now. (Tr. 1052).

7

When seen in September 2016, plaintiff reported experiencing no new seizures, denied any side effects from Keppra, reported that she was still taking Imitrex, and denied daily headaches. (Tr. 1262). Dr. Abou-Elsaad noted that plaintiff's last seizure was three months prior, and a repeat MRI of the brain showed stable small left parietal meningioma. (*Id.*). Dr. Abou-Elsaad noted that plaintiff could resume driving in two months. (Tr. 1263). During a follow-up appointment in January 2017, plaintiff and her family expressed concerns about plaintiff's increasing confusion at home. They reported that she seemed to be more spacey and not following directions at times. They also reported that she had a few episodes of slurred speech at home but had no weakness, numbness, blackout, or seizure-like activity. She was on multiple medications for chronic insomnia, depression, and seizures, with no recent changes. (Tr. 1267). During a mental status examination, Dr. Abou-Elsaad found that plaintiff was oriented to person, place, problem, and time; she had fluent speech; she was aware of recent and remote events; she had a good fund of knowledge; and she had normal attention span and concentration. (Tr. 1269). Examination of plaintiff's cranial nerves revealed that her visual fields were full to confrontation; pupils were equal, round, and reactive to light; and extra ocular movements were intact. Dr. Abou-Elsaad found no nystagmus; her facial sensation was intact to pin prick and light touch; and her facial strength and movements were intact and symmetric. Plaintiff's hearing was intact to finger rub bilaterally; palate elevation was symmetric; shoulder shrug was intact; and tongue movements were normal. (*Id.*). Dr. Abou-Elsaad assessed possible seizure disorder (possible epilepsy versus nonepileptic seizures), which was controlled on Keppra. Dr. Abou-Elsaad also assessed musculoskeletal changes, encephalopathy, and slurred speech. Dr. Abou-Elsaad reduced plaintiff's dose of Keppra. Dr. Abou-Elsaad also found that plaintiff's left parietal benign meningioma was less likely the cause of her seizure as it was stable from her last brain MRI. (Tr. 1270).

In March 2017, plaintiff's CT scan showed minimal to mild paraspinal sinus disease but otherwise normal findings. (Tr. 1389). In May 2017, a brain MRI showed left fronto parietal convexity meningioma measuring up to 1.2 cm with minimal adjacent mass effect and no vasogenic edema. (Tr. 1432).

Plaintiff was referred to counseling by her primary care physician. She received counseling in February and March 2015 at Mercy Health Physicians Counseling and Social Services and reported problems with depression and anxiety. (Tr. 886-900). Plaintiff reported that she treated for six months with a psychiatrist for anxiety and depression but found that it was not helpful. (Tr. 888). On mental status examination, she was oriented x3, with normal mood, affect, behavior, judgment, and thought content. (Tr. 890). Plaintiff was assessed with generalized anxiety disorder. She was given a provisional diagnosis for major depression, recurrent, moderate and met the criteria for early onset dysthymic disorder. (Tr. 889).

### 2. Medical Opinions of Record

Dr. Richard Sexton, Ph.D., conducted a psychological consultative evaluation on June 2, 2015. (Tr. 902-09). Plaintiff reported to Dr. Sexton that she was seeking mental disability benefits due to physical and emotional problems. (Tr. 902). Plaintiff described her current mental syndrome as "depressed, anxious, frustrated, mood, angry, and irritable." (Tr. 904). During the mental status examination, plaintiff established a workable relationship with the examiner, was cooperative, and exhibited no eccentric behavior, impulsivity, or compulsivity. (*Id.*). Her facial expression and prevailing mood suggested anxiety and depression. (Tr. 904-05). Plaintiff demonstrated some difficulty with hypothetical problem-solving and judgment. (Tr. 906). Dr. Sexton assessed depressive disorder and anxiety disorder. (*Id.*). Dr. Sexton opined that plaintiff is expected to be able to understand and apply instructions in the work setting consistent with average intellectual functioning, and she may experience a subjective

9

sense of reduced effectiveness in the area when depressive and anxious symptoms increase, but objective changes in a level prompting performance concerns by others are not to be expected. Dr. Sexton also opined that plaintiff has no limitations in her ability to conform to social expectations in a work setting, and she is expected to respond appropriately to work place pressures. (Tr. 908-09).

In May 2015, state agency physician, Dr. James Cacchillo, D.O., reviewed plaintiff's file on initial consideration. Dr. Cacchillo opined that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about 6 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday. (Tr. 139). Dr. Cacchillo based plaintiff's exertional limitations on "chronic pain/fibromyalgia." (*Id.*). Plaintiff was also limited to frequent climbing of ramps/stairs, stooping, and crouching, and occasional climbing of ladders, ropes, and scaffolds. (*Id.*). In September 2015, Dr. Gary Hinzman, M.D., reviewed plaintiff's file upon reconsideration and affirmed Dr. Cacchillo's assessment, adding the environmental limitations of avoiding moderate exposure to unprotected heights due to plaintiff's obesity. (Tr. 152-54).

State agency psychologist, Dr. Kristen Haskins, Psy.D., reviewed plaintiff's file in July 2015. Dr. Haskins concluded that plaintiff was mildly restricted in activities of daily living; experienced no difficulties in maintaining social functioning; had mild difficulties in maintaining concentration, persistence, or pace; and had no episodes of decompensation of extended duration. (Tr. 137). Dr. Haskins opined that plaintiff was expected to be able to understand and apply instructions in the work setting consistent with average intellectual functioning. Dr. Haskins further opined that plaintiff may experience a subjective sense of reduced effectiveness in the area when depressive and anxious symptoms increase, but objective changes in a level prompting performance concerns by others were not to be expected. Dr. Haskins found that

plaintiff had no limitations in her ability to conform to social expectations in a work setting and was expected to respond appropriately to workplace pressures. Dr. Haskins opined that plaintiff's psychological impairments were not severe. (*Id.*). State agency psychologist, Dr. Bruce Goldsmith, Ph.D., reviewed plaintiff's file upon reconsideration in September 2015 and affirmed Dr. Haskins's assessment. (Tr. 144-51).

### E. Specific Errors

On appeal, plaintiff argues that: (1) the ALJ failed to appropriately weigh her treating sources' opinions; (2) the ALJ improperly concluded that her testimony and subjective complaints were inconsistent with the medical evidence of record; (3) the ALJ failed to comply with SSR 02-01p in considering the impact of plaintiff's obesity on her ability to work; (4) the ALJ failed to properly evaluate her RFC; and (5) the ALJ improperly equated plaintiff's activities of daily living and ability to complete household chores with an ability to maintain substantial gainful activity ("SGA"). (Doc. 14).

### 1. Whether the ALJ appropriately weighed the treating source opinions.

Plaintiff argues as her first assignment of error that the ALJ failed to give good reasons for declining to give controlling weight to her treating physicians. (Doc. 14 at 8-11). In support, plaintiff cites to treatment notes and examination findings from Drs. Simons, Abou-Elsaad, and Heindl. (*Id.*). In response, the Commissioner argues that plaintiff fails to cite to any actual treating source opinions regarding her functional limitations. (Doc. 20 at 9). The Commissioner responds that the ALJ reasonably weighed the medical evidence, including treatment records from Drs. Simons, Abou-Elsaad, and Heindl, in concluding that plaintiff was not disabled. (*Id.* at 9-10).

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. Under the treating physician rule, "greater deference is generally given to the

11

opinions of treating physicians than to those of non-treating physicians. . . ." *Rogers*, 486 F.3d at 242; *Wilson*, 378 F.3d at 544. The rationale for the rule is that treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." *Rogers*, 486 F.3d at 242. A treating source's medical opinion must be given controlling weight if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). If a treating source's medical opinion is not entitled to controlling weight, the ALJ must apply the following factors in determining what weight to give the opinion: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544.

Plaintiff's characterization of Drs. Simons, Abou-Elsaad, and Heindl's treatment notes as "opinions" and triggering application of the treating physician rule is misguided. The Regulations define medical opinions as "statements from medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). "'Observations, without more, are not the type of information from a treating physician which will be provided great weight,' as medical opinions require 'assertions involving judgments about a 'patient's symptoms, diagnosis and prognosis.''" *Messina v. Astrue*, No. 1:12-cv-95, 2013 WL 393917, at *3 (S.D. Ohio Jan. 29, 2013) (Report and Recommendation) (quoting B*ass v. McMahon*, 499 F.3d 506, 510 (6th

Cir. 2007) (in turn citing 20 C.F.R. § 404.1513(b), § 404.1527(a)(2)), *adopted*, 2013 WL 1196597 (S.D. Ohio Mar. 25, 2013). Here, plaintiff cites to various treatment notes, examination findings, and diagnoses rendered by Drs. Simons, Abou-Elsaad, and Heindl, all of which detail their clinical observations and treatment of plaintiff. For example, with respect to Dr. Simons, plaintiff cites to his treatment of plaintiff for denervation and nerve block and examination findings that plaintiff had myofascial tenderness in the trapezius muscle and experienced increased pain with flexion/extension of the cervical and lumbar spine. (Doc. 14 at 9). However, the records cited by plaintiff do not contain statements from Drs. Simons, Abou-Elsaad, and Heindl reflecting their judgment about plaintiff's functional limitations or her work-related abilities despite her impairments so as to constitute an "opinion" under the Regulations. 20 C.F.R. § 404.1527(a)(2).

To the extent plaintiff argues that the ALJ ignored Dr. Abou-Elsaad's statements that she was not permitted to drive (Doc. 14 at 11, citing Tr. 1039-57), she fails to show any reversible error that this limitation is work preclusive. In her reply brief, plaintiff concedes that an inability to drive would not preclude work as a router, cafeteria attendant, or label coder, the jobs identified by the VE and relied upon by the ALJ. (Doc. 23 at 6). Plaintiff nevertheless argues that her "underlying seizure disorder would preclude such employment." (*Id.*). Yet, plaintiff fails to cite any medical evidence of limitations, other than driving, resulting from her seizure disorder that would preclude the limited light work found by the ALJ. Nor has she cited to any medical evidence showing that the frequency and severity of her seizures would preclude substantial gainful activity. In the absence of any opinions from these doctors about plaintiff's functional limitations and her ability to perform work-related activities, the ALJ was not required

to apply the treating physician rule. Accordingly, plaintiff's first assignment of error should be overruled.[3]

## 2. Whether the ALJ properly evaluated plaintiff's subjective complaints.

As her second assignment of error, plaintiff argues that the ALJ erred in concluding that her testimony and subjective complaints were not consistent with the medical evidence of record. (Doc. 14 at 11). Plaintiff argues that the ALJ failed to consider subjective complaints noted in the record regarding her mental functioning, including difficulties with memory, completing tasks, concentration, following instructions, paying attention, handling stress, and participating in social events. (*Id.* at 13) (citing Function Report, Tr. 307-08). Plaintiff also argues that her subjective complaints regarding her physical impairments are consistent with the medical records. (*Id.*). Plaintiff argues that she has difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling and stair climbing. (*Id.*) (citing Function Report, Tr. 308). Plaintiff argues that these subjective complaints are consistent with Dr. Simons' notes that plaintiff's pain was aggravated by these activities and that plaintiff suffered from trigger point tenderness in the occipital region, head and neck, and thoracic and lumbar paraspinal muscles. (*Id.*) (citing Tr. 779, 995-1017). Plaintiff also argues that these records are consistent with her testimony at the hearing that she requires a recliner, must elevate her legs, uses a tens unit and heating pad, and suffers from pain and numbness in her lower extremities. (*Id.*) (citing Tr. 110, 117). Plaintiff contends that the ALJ cherry-picked select portions of the record in considering her subjective complaints. (*Id.* at 14).

The regulations and SSR 16-3p describe a two-part process for evaluating an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant

---

[3] Plaintiff does not challenge the weight the ALJ afforded to the opinions of the state agency reviewing physicians and psychologists or the consultative examiner. Therefore, the Court deems any such arguments waived.

has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, *3-8. The ALJ's assessment of a claimant's subjective complaints and limitations must be supported by substantial evidence and based on a consideration of the entire record. *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of this decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248.

In this case, the ALJ conducted a thorough review of the record and properly evaluated plaintiff's subjective complaints in accordance with 20 C.F.R. § 404.1529(c) and SSR 16-3p. The ALJ found that while plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, the plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 17). In making this determination, the ALJ explained that the totality of the evidence reflects that treatment, examination findings, and activities of daily living were not consistent with the debilitating conditions alleged by plaintiff. The record substantially supports the ALJ's finding that the totality of the evidence was not fully consistent with plaintiff's allegations of

15

disabling mental and physical limitations.

With regard to plaintiff's mental impairments, the ALJ acknowledged that the record reflected a history of affective disorder and mood disorder. (Tr. 17). Nevertheless, the ALJ noted that plaintiff's mental impairments never resulted in inpatient hospitalizations, frequent emergency treatment, or significant mental health treatment. (Tr. 18). Rather, the record showed that plaintiff's mental symptoms were controlled with conservative, routine treatment, which consisted of medication management and some in-office counseling. (*Id.*). Plaintiff reported that she had not seen a mental health provider for a few years and quit counseling because she believed it was a waste of time. (*Id.*) (citing Tr. 1341, 1252). The ALJ also reasonably considered that mental signs and findings were not consistent with the degree of mental limitations alleged by plaintiff as the record contained normal findings with respect to plaintiff's mood, affect, behavior, judgment, and thought content. (Tr. 19) (citing Tr. 941, 1174, 704, 715, 719, 386, 389, 426, 1381, 890, 1130). In addition, the ALJ considered normal findings from a 2017 mental evaluation in relation to plaintiff's bariatric sleeve surgery and MMPI testing. (*Id.*) (citing Tr. 1245, 1253-54). The ALJ reasonably concluded that if plaintiff's mental conditions were disabling, the record would reflect more aggressive treatment and document more serious signs, findings, and symptoms.

With regard to plaintiff's physical impairments, the ALJ acknowledged plaintiff's statements that her symptoms were generally persistent and aggravated by activity. (Tr. 17). The ALJ also considered plaintiff's testimony that she has daily headaches. (*Id.*). Nevertheless, the ALJ noted that these subjective complaints were not supported by the objective medical evidence, treatment, and activities of daily living. The ALJ noted that plaintiff ambulates effectively, and her physical symptoms were "generally well managed with conservative, routine treatment, consisting primar[ily] of medication management." (Tr. 17). The ALJ noted that

16

plaintiff's seizures were controlled with medications such as Keppra, and plaintiff reported pain relief with migraine medication. (*Id.*) (citing Tr. 1132-75 (records from Dr. Heindl); Tr. 1261-89 (records from Dr. Abou-Elsaad and MRI conducted by Dr. Kim); Tr. 1293-1324 (records from Dr. Heindl); Tr. 730-883 (records from Dr. Simons, Greater Cincinnati Pain Management)). The ALJ also considered that plaintiff's physical examinations revealed some signs of pain and tenderness, but she generally had normal neurological, respiratory, and musculoskeletal objective findings. (Tr. 18) (citing Tr. 941, 952, 962, 972, 975, 1132, 1143, 715, 719, 386, 389, 426, 1381, 1028, 1062, 1296, 1301, 1316, 1130, 1329-30, 1333, 1348, 1261-90, 1293-1234). The ALJ also gave a detailed explanation of why plaintiff's subjective complaints of disabling seizures and headaches were not entirely consistent with the objective evidence of record. (Tr. 18). Plaintiff consistently denied experiencing daily headaches. (Tr. 1046, 1262, 1267, 1274). The ALJ also noted that plaintiff's migraines were generally controlled with medications, including Imitrex and Inderal. (Tr. 18). As the ALJ reasonably noted, there has been little to no change in plaintiff's migraine medications in the past year, which suggests her headaches were generally well-controlled. The ALJ reasonably concluded that if plaintiff were having migraine headaches as often as she testified to, it would be expected that her medications would have been adjusted to address the frequency of her headaches, but they were not. (Tr. 17). With respect to plaintiff's seizures, the ALJ noted that an MRI of the brain showed a possible small left parietal benign meningioma, but her EEG was normal, examination findings generally remained stable, and it was felt that the meningioma was "less likely the cause of her seizure[s]". (Tr. 18, citing Tr. 1047, 1052).

Finally, the ALJ reasonably considered that plaintiff's daily activities were inconsistent with her subjective complaints of disabling physical and mental impairments. The ALJ explained that the record showed that plaintiff lives alone, cares for her pet, handles her own

personal care, does some laundry, shops, uses a computer, watches television, talks on the phone, and hosts visitors. (Tr. 19). The ALJ also noted that plaintiff was fairly active and walked for exercise. In 2017, plaintiff reported walking one mile per day and lost 15 pounds as a result. (Tr. 19-20). See *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (noting that an ALJ may "consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments").

Overall, the ALJ reasonably determined that plaintiff's allegations of disabling mental and physical impairments were not supported by the longitudinal record, including the objective medical evidence and plaintiff's treatment history and daily activities. Even if the Court were to agree with plaintiff that certain medical records corroborated plaintiff's complaints, the ALJ's decision must be affirmed if it is supported by substantial evidence. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012); *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999). Where, as here, the ALJ's assessment of plaintiff's subjective limitations is supported by substantial evidence, the Court affords great weight and deference to the ALJ's finding. *Walters*, 127 F.3d at 531. Accordingly, plaintiff's second assignment of error should be overruled.

### 3. Whether the ALJ erred in considering the impact of plaintiff's obesity.

As her third assignment of error, plaintiff argues that the ALJ failed to consider the impact of her obesity on her ability to work in accordance with SSR 02-01p. (Doc. 14 at 14-16). Plaintiff argues that the ALJ failed to consider the record evidence documenting her obesity, such as her thyroid condition and the fact that she underwent gastric sleeve surgery and was referred for "revision surgery" as a result of recurrent hiatal hernias, which was to be performed one month following the hearing. (*Id.* at 15). Plaintiff argues that she will soon undergo gastric bypass surgery since the gastric sleeve surgery failed. (*Id.*). Further, plaintiff argues that following the gastric sleeve surgery, she has had recurrent issues with irritable bowel syndrome

18

and diarrhea. (*Id.*). Plaintiff testified that she experiences these issues every day for an hour a day. (*Id.*).

SSR 02-01p addresses the evaluation of obesity in the disability process. Social Security Ruling 02-01p, 2002 WL 34686281 (Sept. 12, 2002). SSR 02-01p recognizes that obesity may affect an individual's ability to perform the exertional functions of sitting, standing, walking, lifting, carrying, pushing, and pulling, as well as an individual's ability to perform postural functions such as climbing, balancing, stooping, and crouching. SSR 02-01p, 2002 WL 34686281, at *6. The Ruling insures that the Commissioner will consider a claimant's obesity in performing steps two through five of the sequential evaluation process. SSR 02-01p, 2002 WL 34686281, at *3. SSR 02-01p does not mandate a particular mode of analysis for an obese claimant. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). "It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations." *Id.* at 412 (quoting SSR 02-01p). *See also Young v. Comm'r of Soc. Sec.*, No. 3:09 CV 1894, 2011 WL 2182869, at *7 (N.D. Ohio June 6, 2011) ("The Sixth Circuit requires the ALJ to mention obesity either expressly or indirectly where the record includes evidence of obesity's effects on the claimant's impairments.").

In light of the regulations requiring that a claimant "must furnish medical and other evidence that [the Commissioner] can use to reach conclusions about your medical impairment(s) and . . . its effect on your ability to work on a sustained basis," 20 C.F.R. § 404.1512, a claimant relying on obesity to establish disability should provide evidence that obesity affects her ability to work. *Snyder v. Comm'r of Soc. Sec.*, No. 2:10-cv-00821, 2012 WL 27302, at *8 (S.D. Ohio Jan. 5, 2012) (Report and Recommendation), *adopted*, 2012 WL 871202 (S.D. Ohio Mar. 13, 2012) (citing *Cranfield v. Comm'r, Soc. Sec.*, 79 F. App'x 852, 857-58 (6th Cir. 2003) (finding that even though physician's reports indicated obesity, the ALJ was not

obligated to address the claimant's obesity in light of the claimant's failure to provide evidence that her obesity was a significant impairment that affected her ability to work); *May v. Astrue*, No. 4:10-cv-1533, 2011 WL 3490186, at *6 (N.D. Ohio June 1, 2011) (holding that the ALJ had no obligation to address a claimant's obesity when, despite a diagnosis of obesity in the record, the claimant did not carry burden of demonstrating there were any "functional limitations ascribed to the condition[ ]")).

Here, the ALJ found that plaintiff's obesity was a severe impairment. (Tr. 12). The ALJ also considered plaintiff's obesity at step three of the sequential evaluation process in evaluating whether plaintiff's impairments met the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 14). At step three, the ALJ specifically noted that he "considered the impact obesity has on limitation of function, including the [plaintiff]'s ability to perform routine movement and necessary physical activity within the work environment" in accordance with SSR 02-01p. (*Id.*). Nevertheless, the ALJ concluded that the record did not demonstrate that plaintiff's obesity was medically equivalent to a listed impairment. (*Id.*). Plaintiff argues that the medical records discussed above support that her obesity limits her ability to function. However, plaintiff has not cited any medical evidence or opinions indicating there are additional restrictions the ALJ should have included in the RFC to accommodate the impact of obesity on her other impairments. Nor has plaintiff identified any specific functional limitations imposed by her obesity. The ALJ was not required to assume in the absence of such evidence that obesity exacerbated plaintiff's impairments and impacted her ability to perform basic work activities. *See* SSR 02-01p, 2002 WL 34686281, at *6 (the ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments."). For these reasons, the Court finds that the ALJ adequately considered plaintiff's obesity. Plaintiff's third assignment of error should be overruled.

### 4. Whether the ALJ properly determined plaintiff's RFC

Plaintiff argues that the ALJ rejected the substantial evidence of record in fashioning the RFC, which in turn did not accurately reflect her true functional limitations. (Doc. 14 at 19). Plaintiff cites to Dr. Abou-Elsaad's records documenting a history of chronic migraines, as well as her own testimony that she experiences frequent headaches that have gotten progressively worse and result in vomiting. (*Id.* at 17). Plaintiff also cites to her testimony that she suffers from panic attacks over four to five times per week. (*Id.*). Plaintiff also cites to testimony that she experiences crying spells a couple of times per week and has received diagnoses of Generalized Anxiety Disorder, Major Depression, and Dysthymic Disorder. (*Id.*) (citing Tr. 114, 890).

The ultimate responsibility for determining a claimant's capacity to work lies with the Commissioner. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009)). *See also* 20 C.F.R. § 404.1546(c) (the responsibility for assessing a claimant's RFC lies with the ALJ). It is the ALJ's duty to fashion an RFC based on all of the evidence of record. The ALJ can fulfill his obligation "without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) (citations and internal quotation marks omitted)). *See also Simons v. Barnhart*, 114 F. App'x 727 733 (6th Cir. 2004) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.") (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).

In this case, the ALJ gave plaintiff an RFC for light work with postural and non-

exertional limitations. As explained above, there was no opinion evidence from plaintiff's treating physicians that required the ALJ to apply the treating physician rule, and the state agency physicians opined that plaintiff could perform less than the full range of light exertional activity. (Tr. 129-142; 144-156). Plaintiff's argument that the ALJ ignored pertinent evidence and statements from her testimony is not well-taken. Contrary to plaintiff's assertion, the ALJ's decision thoroughly considered plaintiff's testimony regarding daily headaches but concluded that it was not supported by the record. (Tr. 17). The ALJ noted that plaintiff's migraine medications had not been adjusted and treatment notes regularly noted that her migraines were well-controlled. (Tr. 17-18). Plaintiff contends the RFC does not accommodate her "ongoing struggles with severe chronic migraine headaches" (Doc. 23 at 7), but plaintiff fails to cite to any medical evidence that supports additional functional limitations or undermines the ALJ's decision. Likewise, the ALJ thoroughly considered plaintiff's mental health impairments and noted that mental evaluations generally revealed normal findings, and plaintiff's symptoms were generally well-controlled with conservative, routine treatment consisting of medication management and in-office counseling. (Tr. 18). Plaintiff has not shown how the records and hearing testimony she cites support further limitations in the RFC than the ALJ assessed. The undersigned notes that even where substantial evidence would support a different conclusion or where a reviewing court would have decided the matter differently, the ALJ's decision must be affirmed if it is supported by substantial evidence. *See Her*, 203 F.3d at 389. Accordingly, the ALJ's RFC determination is supported by substantial evidence and plaintiff's fourth assignment of error should be overruled.

**5. Whether the ALJ improperly equated plaintiff's daily activities and household chores to an ability to maintain SGA.**

As her fifth assignment of error, plaintiff alleges that the ALJ improperly equated her daily activities and household chores with an ability to maintain SGA and work on a sustained basis. (Doc. 14 at 19-21). While an individual's ability to perform household and social activities is not direct evidence of an ability to maintain gainful employment, "[a]n ALJ may . . . consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of . . . ailments." *Keeton*, 583 F. App'x at 532. *See also Gilbert v. Comm'r of Soc. Sec.*, No. 2:13-cv-00355, 2014 WL 4659858, at *3 (S.D. Ohio Sept. 17, 2014) (evidence of the plaintiff's daily activities, "including being able to get along with people in social settings, is inconsistent with the conclusion that Plaintiff was someone suffering from a 'disabling mental impairment'"). *Cf. Yates v. Colvin*, 940 F. Supp. 2d 664, 674 (S.D. Ohio 2013) (citing *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (permitting an ALJ to consider daily activities such as housework and social activities in evaluating complaints of disabling pain); 20 C.F.R. § 404.1529(c)(3)(i) (authorizing an ALJ to consider activities when evaluating pain and functional limitations)).

Here, the ALJ did not improperly equate plaintiff's activities of daily living with an ability to perform SGA. The ALJ noted that plaintiff could perform a wide range of activities that were not supportive of a disability finding. (Tr. 20). The ALJ also noted that despite her physical and mental impairments, plaintiff has engaged in "a somewhat normal level of daily activity and interaction." (*Id.*). Plaintiff challenges the ALJ's conclusion that "the physical and mental capabilities requisite to performing many of the tasks described above, as well as the social interactions, replicate those necessary for obtaining and maintaining employment." (*Id.*). The ALJ did not specifically explain which of plaintiff's daily activities he considered essential

to obtaining and maintaining employment. Had the ALJ simply equated plaintiff's ability to handle personal care, provide for her pets, shop, count change and use a checkbook, use a computer, watch television, talk on the phone, and host visitors with the ability to perform sustained full-time employment as plaintiff alleges, the Court would agree that the ALJ's evaluation of plaintiff's daily activities would be troubling. However, as explained above in connection with plaintiff's second assignment of error, the ALJ considered other relevant factors in addition to plaintiff's daily activities in assessing plaintiff's subjective complaints, including the lack of supporting objective evidence and examination findings and plaintiff's conservative treatment history. Accordingly, plaintiff's final assignment of error should be overruled.

For the foregoing reasons, **IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and this case be closed on the docket of the Court.

Date: 2/11/2020

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

AMBER ANN FLINDERS,
    Plaintiff,

Case No. 1:18-cv-770
Barrett, J.
Litkovitz, M.J.

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).